NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2730
_____

WESTMINSTER AMERICAN INSURANCE COMPANY;
WALDY REYES; ARGENIS REYES;
ROSALBA MUNOZ, H/W, AS ASSIGNEES
OF 4207 CHESTER AVE, LLC,
                                                            Appellants

v.

SECURITY NATIONAL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-20-cv-02195)
District Court Judge: Honorable John R. Padova
_____

Argued June 27, 2022
_____

Before: McKEE,[*] RESTREPO, and BIBAS, *Circuit Judges*

(Opinion filed: July 7, 2023)

Debra T. Varner **[ARGUED]**
Jeffrey D. Van Volkenburg
James A. Varner, Sr.
Varner & Van Volkenburg
360 Washington Avenue
Clarksburg, WV 26301

_____

[*] Judge McKee assumed senior status on October 21, 2022.

*Counsel for Appellants*

Louis A. Bove **[ARGUED]**
Marc J. Syken
Bodell Bove
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
    *Counsel for Appellee*

_____

OPINION[**]

_____

McKEE, *Circuit Judge*.

Westminster American Insurance Company ("Westminster"), Waldy Reyes, Argenis Reyes, and Rosalba Munoz appeal the District Court's order granting Security National Insurance Company's ("SNIC") motion to dismiss for failure to state a claim. For the following reasons, we vacate the District Court's order and remand for further proceedings consistent with this opinion.[1]

---

[**] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

[1] The United States District Court for the Eastern District of Pennsylvania had jurisdiction over this matter pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. Additionally, we exercise plenary review over the District Court's order granting a motion to dismiss for failure to state a claim. *Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*, 34 F.4th 190, 195 (3d Cir. 2022). "We accept the complaint's factual allegations as true and construe these allegations in the light most favorable to the plaintiffs." *Id.* (citation omitted).

# I.[2]

## A. The Disputed Policy Provisions

We begin our discussion with a review of the relevant provisions in AM Marlin's commercial general liability insurance policy with SNIC. The policy contains an Employer's Liability Exclusion ("ELE") which provides that coverage is unavailable for bodily injury to an employee of "any insured" arising out of and in the course of either (1) employment by the insured or (2) the performance of duties related to the conduct of the insured's business.[3] Additionally, AM Marlin's policy includes a Blanket Additional Insured Endorsement, which lists several entities in a Schedule. This list includes a provision modifying "who is an insured" under the policy. The provision reads:

> A. **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for your acts or omissions arising out of your ongoing operations performed for that insured.[4]

The District Court determined that the ELE foreclosed coverage for Argenis Reyes' claims.[5] Specifically, it reasoned that the ELE applied because Argenis was employed by Altman Management Company ("Altman"), and Altman is an "additional insured" because it is one of the entities listed in the Additional Insured Schedule.[6] As an

---

[2] Because we write primarily for the parties, we need not recite the convoluted factual and procedural background of this case in detail.

[3] A218.

[4] A270.

[5] For clarity, we refer to Argenis Reyes by his first name in this opinion. Argenis Reyes and Waldy Reyes are unrelated.

[6] *Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co.*, 555 F. Supp. 3d 75, 85–86 (E.D. Pa. 2021).

additional insured, the District Court concluded that Altman fell under the "any insured" language provided in the ELE.

Understandably, the primary focus of this appeal is the parties' competing interpretations of the Additional Insured Endorsement. Put simply, if Altman is indeed an "additional insured" as defined by AM Marlin's policy with SNIC, then the ELE precludes coverage for Argenis' claims. If Altman is not an "additional insured," then the District Court erred in deciding that the ELE barred coverage. The Appellants challenge the District Court's application of the ELE on the ground that being listed in the Schedule alone does not make Altman an "additional insured." Rather, they assert that the "Who Is An Insured" amendment instructs that a party does not become an "additional insured" in this policy unless they are "held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for that insured."[7] Furthermore, the Appellants claim that Altman cannot be held liable as defined by the amendment, and therefore Altman is not an "additional insured" under the policy.

Before addressing the merits of the Appellants' claims, we first turn to the well-settled principles of insurance contract interpretation under Pennsylvania law for guidance.

## B. Ambiguity in Insurance Policies

When interpreting an insurance policy under Pennsylvania law, a court must "ascertain the intent of the parties as manifested by the language of the written

---

[7] Appellant's Br. at 25.

instrument."[8] Further, a court must construe commonly used words and phrases "in their natural, plain, and ordinary sense, with [the] court free to consult a dictionary to inform its understanding of terms."[9] If terms are open to more than one interpretation, then they are deemed ambiguous.[10] In Pennsylvania, ambiguities in an insurance policy must be construed against the insurer as the drafter of the agreement.[11] Finally, "[i]n interpreting a policy as a whole, and resolving potential ambiguities, a court often must compare the language used in one provision of the policy with the language in another provision."[12]

Upon reviewing AM Marlin's policy *as a whole*, we conclude that the language in the Additional Insured Endorsement is ambiguous. Accordingly, the language must be construed against SNIC as drafter of the policy. While the premise that Altman is an additional insured since it is expressly listed in the Schedule is a plausible one, we cannot ignore that other explanations to the contrary are just as viable. The District Court and SNIC assert that the limiting language found in the "Who Is An Insured" amendment goes to the scope of coverage, and not to one's status as an additional insured. But the literal construction and arrangement of several policy provisions suggests otherwise.

First, the "Who Is An Insured" subheading is noticeably written in bold—as a matter of common sense, one could reasonably assume that everything discussed in that

---

[8] *Am. Auto. Ins. Co. v. Murray,* 658 F.3d 311, 320 (3d Cir. 2011) (citation and internal quotation marks omitted).
[9] *Id*. at 320–21 (citations omitted).
[10] *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999).
[11] *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900–01 (3d Cir. 1997), *as amended* (Aug. 28, 1997) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 305 (1983)).
[12] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016).

provision pertains to the criteria for status as an insured party. Second, Section I of the policy is explicitly dedicated to detailing the scope of coverage available. At first blush, it may appear that this section only provides for the scope of coverage available to AM Marlin, as the Named Insured under this policy. However, just before "Section I – Coverages," the policy explains that "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured."[13] As discussed above, the "Who Is An Insured" amendment in the Endorsement modifies Section II to include additional insureds. Therefore, it is evident that the policy already unequivocally addresses the scope of coverage for an additional insured. Finally, though the District Court and SNIC reason that the "but only to the extent . . . held liable" language from the "Who Is An Insured" amendment is solely about limiting the scope of coverage available to an additional insured, there is again another place in the policy that appears to more clearly serve that very function. Just below the amendment, the policy states:

> B. "*With respect to the insurance afforded to these additional insureds*, the following exclusion is added:
> **2. Exclusions**
> This insurance does not apply to 'bodily injury' or 'property damage' occurring after:
> (1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or
> (2) That portion of 'your work' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a

---

[13] A227.

principal as a part of the same project.[14]

In sum, the plain construction of the policy suggests that the scope of coverage explained in Section I applies to both AM Marlin *and* any additional insured as defined by the "Who Is An Insured" amendment to Section II; any limitations on that scope are then explained in the "Exclusions" provision in the Additional Insured Endorsement. The policy, on its own terms, seems to acknowledge that one's status as an "additional insured" depends on whether (1) they are listed in the Schedule *and* (2) they are "held liable" for AM Marlin's acts or omissions arising out of work AM Marlin has performed for them.

We agree that the District Court's contrary analysis has considerable merit. However, the application of the ELE here turns on whether the policy's terms are *open to more than one interpretation*. Since there is indeed more than one way to interpret the Additional Insured Endorsement, we must construe the provision against SNIC. Being listed in the Schedule, alone, does not confer status as an "additional insured" to Altman.[15]

### C. Altman is not an "Additional Insured" in this Context and the ELE is Inapplicable

---

[14] A270 (italics added).

[15] Moreover, *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365 (3d Cir. 2001) is not as helpful to SNIC as it may hope. Though it is true that certain parties in that case received "additional insured" status just by being listed in the policy, the disputed provision in that case does not contain the same conditional language that is present in the "Who Is An Insured" amendment here.

We next examine whether Altman is an additional insured as it is fully defined in the "Who Is An Insured" amendment. As explained above, the amendment provides that one becomes an insured under AM Marlin's policy when they are listed in the Schedule, "*but only* to the extent that the person or organization shown in the Schedule is held liable for [AM Marlin's] acts or omissions arising out of [AM Marlin's] ongoing operations performed for that insured."[16] The Appellants claim that Altman is not an additional insured because it cannot be held liable[17] for Argenis' claims since it already paid workers' compensation to Argenis following the incident. In particular, the Appellants raise the exclusivity provision in Pennsylvania's workers' compensation statute, which provides that "[t]he liability of an employer under this act *shall be exclusive and in place of any and all other liability* to such employes[sic], his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death."[18]

We likewise read the workers' compensation statute to "shield" Altman from additional liability to Argenis. Plainly, Altman's payments to Argenis under the statute effectively supplanted all other forms of liability that it could have had to Argenis.[19]

---

[16] A270 (emphasis added).

[17] To be sure, we understand that one is held "liable" when "obligated according to law or equity." *See Liable*, MERRIAM WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/liable (last visited Jun. 25, 2023).

[18] 77 Pa. Stat. Ann. § 481(a) (emphasis added).

[19] In the absence of any Pennsylvania case law that is on point, we are persuaded that the Pennsylvania Supreme Court would agree with the analysis in *Graham Constr., Inc. v. Markel Am. Ins., Co.*, 180 F. Supp. 3d 626 (D. Neb. 2016). There, the Additional Insured Endorsement provided that a party was an additional insured only to the extent that the Named Insured was "held liable" for its acts. *Id*. at 634. The District of Nebraska

Accordingly, because Altman is not "held liable" for AM Marlin's acts within the context of the amendment, it is not an additional insured. Because it is not an additional insured, SNIC cannot use the ELE to preclude coverage for Argenis' claims.[20]

Finally, it must be noted that we write narrowly to explain that Altman is and cannot be liable to *Argenis* for AM Marlin's acts given its workers' compensation payments, as that is the crux of the issue before us. We offer no opinion on whether Altman may be liable for AM Marlin's acts for any other reason not previously raised, especially since such an inquiry also turns on whether AM Marlin's acts arose out of work it performed *for* Altman. Our analysis need not reach those questions.[21]

**II.**

---

concluded that the Named Insured could not be held liable because it already provided recourse to the injured party via Nebraska's Workers' Compensation Act. *Id*. at 638. SNIC attempts to distinguish *Graham* from the instant case on the ground that the "held liable" language of the additional insured endorsement pertained to the *Named Insured*, as opposed to the potential additional insured party. While that may be true, the relevant point is that an employer who has paid workers' compensation to an injured party cannot again be "held liable" to that employee in the context of an additional insured endorsement.

[20] Given that the ELE does not preclude coverage here, we need not address whether SNIC must be estopped from raising the ELE as a defense. Furthermore, because the District Court erroneously held that the ELE applied, it did not meaningfully examine the Appellants' various extracontractual claims. To avoid the risk of ruling on these matters with an undeveloped record, we leave it to the District Court to consider these claims on remand.

[21] Similarly, we also decline to discuss whether SNIC's duty to defend was even triggered given that no formal complaint was filed at the time SNIC refused to participate in the mediation. *See Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 589 Pa. 317, 329–30 (2006) ("It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured."). Whether the facts of this case indicate that a "suit" was involved that gave rise to a duty to defend is best considered by the District Court in the first instance.

For the above reasons, we vacate the District Court's order concluding that the

ELE precludes coverage and remand for further proceedings consistent with this opinion.